IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BRUCE FLEMING, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-15-3358 |
| | * | |
| RAY MABUS, Secretary, U.S. Department of the Navy, | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Defendant Ray Mabus, Secretary of the United States Department of the Navy ("defendant" or "Secretary Mabus") moves to dismiss plaintiff Bruce Fleming's ("plaintiff" or "Professor Fleming") Complaint for (1) lack of subject matter jurisdiction and (2) failure to state a claim upon which relief can be granted ("Defendant's Motion") (ECF No. 16). Plaintiff has filed a Response in Opposition to Defendant's Motion ("Plaintiff's Opposition") (ECF No. 18), and defendant has filed a Reply ("Reply") (ECF No. 24). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendant's Motion to Dismiss (ECF No. 16) is GRANTED.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

1

Plaintiff is a tenured professor of English at the United States Naval Academy ("USNA" or "Academy") in Annapolis, Maryland. (ECF No. 1 at ¶ 2.) During plaintiff's August 30, 2013 class discussion, plaintiff prompted his students[1] to consider the implications of the USNA's Sexual Assault Prevention and Response Program ("SAPR Program" or "SAPR"). (*Id.* at ¶ 7.) Two female midshipmen took issue with Professor Fleming's comments about the SAPR program and subsequently filed a complaint with the head of the Academy's SAPR office. (*Id.* at ¶ 7, 13.) In their complaint, the two female midshipmen alleged that they had been subjected to a "hostile work environment" on account of Professor Fleming's comments about the SAPR Program and discussion of the poem, "Kong Looks Back on His Tryout With the Bears."[2]

The female midshipmen's complaint was initially referred to the USNA's Equal Employment Office, which, after review, declined to take any action. (*Id.* at ¶ 14.) USNA officials then prompted Professor Mark McWilliams, Chair of the English Department, to undertake an investigation of Professor Fleming's conduct. (*Id.* at ¶ 15, 16.) Professor McWilliams initially expressed reservations about the investigation. (*Id.*) However, when told that the military commanders would conduct their own inquiry should he refuse, Professor McWilliams elected to have the English Department investigate. (*Id.* at ¶ 16.)

The investigation was conducted in mid-September 2013 and found no evidence of any misconduct by Professor Fleming. (ECF No. 1 at ¶ 21.) To the contrary, the investigators concluded that Professor Fleming's students held him in high regard and

---

[1] Students at the Academy are midshipmen and are referred to herein as "students" and "midshipmen" interchangeably.

[2] William Trowbridge, "Kong Looks Back on His Tryout with the Bears," *Put This On, Please* (Red Hen Press, 2014).

welcome his challenging pedagogical approach.  (*Id.* at ¶ 23.)  Seemingly vindicated by the English Department investigation, Professor Fleming apparently did not allow this matter to conclude.  For reasons which remain unclear, he initiated an Academy internal conduct case against the two female midshipmen who had complained about his class discussion.  (*Id.* at ¶ 33.)  *See also* ECF No. 16-1 at 5.

In January 2014, the USNA opened a Command Investigation[3] into "the underlying complaint of a hostile work environment in the creative writing class" and the Academy's subsequent handling of the students' complaint.  (ECF No. 1 at ¶ 27.)  Professor Fleming alleges that the purpose of the Command Investigation was "to silence [him] once and for all by threatening him with the possibility that the military would impose harsh discipline on him."  (*Id.* at ¶ 29.)  As a result of the Command Investigation, Professor Fleming was issued a Letter of Reprimand ("LOR") in June 2014.  (*Id.* at ¶ 30.)  The LOR strongly criticized Professor Fleming, concluding that, "You abused your position and influence in an attempt to harm the reputation and potential future careers of the midshipmen.  This is unacceptable and will not be tolerated."  (*Id.* at ¶ 31) (footnote added).  As a result of the LOR, Professor Fleming alleges that he was denied a merit pay increase and $7,000 in summer funding he would have received but for the LOR.  (ECF No. 1 at ¶ 42.)[4]

---

[3] A Command Investigation is provided for in the Manual of the Judge Advocate General, which "prescribes regulations implementing or supplementing certain provisions of the [Uniform Code of Military Justice] and the [Manual for Courts-Martial]."  (ECF No. 1 at ¶ 28.)

[4] USNA faculty members are in leave without pay status during the summer months between academic years. *See* ECF No. 16-1 at 9, n. 6.  Many professors secure outside research funding for summer projects. *Id.*  The Naval Academy Research Counsel ("NARC") also provides some support for faculty research on a competitive basis. *Id.*  Professor Fleming applied for funding through the NARC. *Id.*

On June 12, 2014, Professor Fleming filed a complaint with the Office of Special Counsel under the Whistleblower Protection Act of 1989, claiming that USNA had retaliated against him for engaging in protected activity in violation of 5 U.S.C. § 2302(b)(8).  (ECF No. 18 at 9.)   After review, the OSC advised Professor Fleming of his right to file an individual right of action ("IRA") appeal to the Merit Systems Protection Board ("MSPB") pursuant to 5 U.S.C. § 1214 and § 1221.  (*Id.*)  Professor Fleming filed a timely appeal to the MSPB, alleging that:

> "[USNA] committed harmful procedural error when it subjected him to a Command Investigation, and that the Agency's actions in issuing him the LOR and denying him a merit pay increase were taken in retaliation for his protected disclosure in raising concerns about the SAPR Program."

(*Id.* at 10.)  An MSPB Administrative Judge dismissed Professor Fleming's appeal for lack of jurisdiction.   (*Id.*)   Professor Fleming then filed a petition for board review of the Administrative Judge's decision.  (*Id.* at 12.)  The Board modified the Administrative Judge's opinion, but also dismissed the complaint for lack of jurisdiction.  (*Id.*)  As plaintiff notes, "At no point did Professor Fleming press his First Amendment claim before the MSPB or the OSC."  (*Id.*)

Plaintiff asks this Court to enter a declaratory judgment "that the actions of Defendant in issuing Plaintiff a Letter of Reprimand and using the Letter of Reprimand to deny him a merit pay increase and $7,000 in summer funding violated the First Amendment."  (ECF No. 1 at 17.)   Plaintiff also seeks a preliminary and permanent injunction ordering the LOR removed from plaintiff's personnel file and "preventing Defendant from taking further adverse action against Plaintiff that is intended to prevent him from speaking out on matters of public concern."  (*Id.*)

<u>STANDARDS OF REVIEW</u>

**I.      Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dept. of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).

## II.     Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).[5]

## ANALYSIS

Defendant argues that plaintiff's "Complaint should be dismissed because this Court lacks subject matter jurisdiction over his claims, which are entirely precluded under the Civil Service Reform Act of 1978 ("CSRA")."[6]   (ECF No. 16-1 at 3.)  Defendant relies on the Supreme Court's decisions in *United States v. Fausto*, 484 U.S. 439, 108 S. Ct. 668, 98 L. Ed. 2d 830 (1988) and *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 183 L. Ed. 2d 1 (2012) for the proposition that the CSRA is the "exclusive framework for review of federal employment disputes and precludes alternative avenues of review," including when those disputes involve constitutional claims.  (ECF No. 16-1 at 13-14.)  Plaintiff, on the other hand, argues that because the challenged employment actions (the LOR and denial of merit pay increase) are

---

[5] The standard of review of motions to dismiss made pursuant to Rule 12(b)(6) is stated in an abbreviated form, as this Court's ruling is based on Rule 12(b)(1) only for the reasons stated *infra*.

[6] The CSRA is codified in various sections of Title 5 of the United States Code.

not expressly covered by the CSRA's remedial scheme, plaintiff retains the right to seek relief on his constitutional claims in this court pursuant to 28 U.S.C. § 1331. (ECF No. 18 at 16-17.)

The CSRA "comprehensively overhauled the civil service system," creating a "framework for evaluating adverse personnel actions against [federal employees]." *Lindahl v. Office of Personel Mgmt.,* 470 U.S. 768, 773–74, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). "It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Fausto,* 484 U.S. at 443. "A primary purpose of enacting the CSRA was 'to replace the haphazard arrangements for administrative and judicial review of personnel action' that existed prior to the CSRA. When the CSRA was enacted, the perception was that the existing appeals process was so lengthy and complicated that federal supervisors were discouraged from taking legitimate adverse personnel actions. Further, because multiple jurisdictions had concurrent jurisdiction over actions challenging personnel decisions, there was a wide variation in decisions regarding the same or similar matters. Accordingly, the CSRA was designed to eliminate this problem as well." *Hall v. Clinton*, 235 F.3d 202, 204–05 (4th Cir. 2000) (quoting *Fausto*, 484 U.S. at 444-45) (internal references omitted).

Chapter 75 of the CSRA sets out the types of adverse personnel actions covered by the Act. Subchapter I governs minor adverse action, defined as suspension for 14 days or less. 5 U.S.C. § 7502. Subchapter II governs major adverse actions, defined as: (1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." 5 U.S.C. § 7512. *See Fausto*, at 446–47. Neither

subchapter provides a remedial scheme for letters of reprimand or other minor personnel actions.

While not cited in either party's brief, an analogous case involving a federal employee's constitutional claims came before the United States Court of Appeals for the District of Columbia Circuit. *Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004) (Roberts, J.). In *Graham*, the FBI, subsequent to an internal investigation, issued plaintiff a letter of censure with no loss of pay or benefits as a result of what the agency determined to be plaintiff's misconduct. *Id.* at 932. In his suit, plaintiff alleged that the agency had "denied him procedural due process and violated his equal protection rights." *Id.* at 932.[7]

The case now before the Court, like *Graham*, "involves an employee granted certain judicial review rights under the CSRA, but whose rights do not extend to the personnel action at issue – a letter of censure." *Graham*, 358 F.3d at 934. Plaintiff's ability to pursue his constitutional claims in this Court similarly depends on "whether in granting review with respect to some personnel actions under the CSRA, Congress meant to preclude the review of others." *Id.*

As set forth by then-Judge, now Chief Justice Roberts, "[t]he logic of *Fausto*, if not its holding, provides the answer." *Graham*, 358 F.3d at 934. Specifically:

> "The Court's explicit assumption in *Fausto* that employees with judicial review rights under the CSRA may not obtain judicial review of personnel actions outside the bounds of the CSRA covered precisely the situation at issue here — a personnel action as to which the CSRA grants no right of review, even

---

[7] It bears mention that, "Although FBI employees are generally excluded from CSRA provisions, *see* [5 U.S.C.] §§ 2302(a)(2)(C)(ii), 7511(b)(8), Subchapter II does apply to "preference eligible" FBI employees. § 7511(a)(1)(B). … Employees covered by Subchapter II are entitled to administrative review by the Merit Systems Protection Board (MSPB), and subsequent judicial review in the Court of Appeals for the Federal Circuit. [5 U.S.C.] §§ 7513(d), 7701, 7703." *Graham*, 358 F.3d at 933. Accordingly, the viability of Graham's claims, like those of plaintiff in this case, was dependent upon the CSRA's preclusive effect.

> for employees who are otherwise granted such rights under the CSRA in other circumstances."

*Id.* (citing *Fausto*, 484 U.S. at 449-50). Thus, "[g]ranting Graham a right of direct judicial review for a letter of censure would give him greater rights than the CSRA affords for major adverse actions, for what does not even rise to the level of a minor adverse action under the CSRA." *Graham*, 358 F.3d at 935. Because the adverse personnel actions alleged in this case—the LOR and the denial of a merit pay increase—similarly fall below the CSRA minima for major and minor adverse personnel actions, Professor Fleming "is in the same boat as Fausto [and Graham] – the CSRA provides no relief and precludes other avenues of relief." *Graham*, 358 F.3d at 935.

While Professor Fleming seeks to skirt the CSRA's exclusive remedial scheme by framing his claims as constitutional in nature, both *Graham* and, crucially, *Elgin* foreclose this attempt. (ECF No. 18 at 13-16.) *Graham*, as set forth above, dealt with alleged due process and equal protection violations within the scope of the plaintiff's federal employment. *Graham*, 358 F.3d at 932. In *Elgin*, petitioners were terminated from their executive agency employment based on 5 U.S.C. § 3228, which bars from federal agency employment anyone who has knowingly and willfully failed to register for the Military Selective Service. Petitioners alleged that Section 3228 was an unconstitutional bill of attainder and unconstitutionally discriminated against them on the basis of sex. *Elgin*, 132 S.Ct. at 2131. As the constitutional claims in both cases arose within the employment relationship, both courts held that the CSRA provided the exclusive avenue for relief.[8]

---

[8] While *Elgin* may be distinguishable from the instant case insofar as *Elgin* dealt with an employee's removal—an adverse personnel action covered by the CSRA—the Supreme Court nonetheless reiterated *Fausto*'s emphasis on the exclusivity of the statutory scheme:

Accordingly, plaintiff's claims are precluded by the CSRA and must be dismissed for lack of subject matter jurisdiction.[9]

CONCLUSION

For the reasons stated above, Defendant Secretary Mabus' Motion to Dismiss (ECF No. 16) is GRANTED.

A separate Order follows.

Dated:  September 30, 2016                    ___/s/_____
                                              Richard D. Bennett
                                              United States District Judge

---

"The purpose of the CSRA also supports our conclusion that the statutory review scheme is exclusive, even for employees who bring constitutional challenges to federal statutes. As we have previously explained, the CSRA's integrated scheme of administrative and judicial review for aggrieved federal employees was designed to replace an outdated patchwork of statutes and rules' that afforded employees the right to challenge employing agency actions in district courts across the country. Such widespread judicial review, which included appeals in all of the Federal Courts of Appeals produced 'wide variations in the kinds of decisions ... issued on the same or similar matters' and a double layer of judicial review that was 'wasteful and irrational.'"

*Elgin*, 132 S. Ct. at 2135 (quoting *Fausto*, 484 U.S. at 444-45) (internal references omitted).

[9] As this Court is without subject matter jurisdiction over plaintiff's claims, it need not address the second basis for defendant's motion.